### THE JOHN F. HARRIS.

### THE WYOMISSING.

### HARRIS et al. v. PORT READING R. CO.

District Court, S. D. New York.

Sept. 5, 1929.

Park, Mattison & Lynch, of New York City (Anthony V. Lynch, Jr., of New York City, of counsel), for libelant.

Macklin, Brown, Lenahan & Speer, of New York City (Horace L. Cheyney, of New York City, of counsel), for the Wyomissing and respondent.

WOOLSEY, District Judge.

My decision in this case is that the libel must be dismissed as against the tug Wyomissing, but that the libelant may recover against the Port Reading Railroad Company in personam.

The facts are in the main admitted.

On Sunday morning, April 3, 1927, at about 6:15 a. m. the tug Wyomissing arrived with a flotilla of nineteen light coal barges at Port Reading. The barges were arranged in six tiers of three barges to the tier with one single barge aft of the last tier. This was not unusually large for a New York Harbor coal flotilla.

The first five tiers, fifteen barges in all, were worked in by the Wyomissing alongside barges already moored to the light stakes, which are to the southward of the Port Reading Piers, and the bargees in charge moored them to the stakes or to the barges already lying moored there.

The last tier of three barges, and the single barge above mentioned, were worked in to the slip south of Reading Pier No. 2 and there moored.

None of the barges in the flotilla was moored so that it extended outside of Pier 2.

The method of disposing of the barges was usual, and was similar to the method the pilot of the Wyomissing had always previously followed without having any damage result.

After having thus disposed of the barges in its care, the Wyomissing inquired at the office of the terminal for orders, and, not having received further orders, returned to New York to lay up for Sunday.

The somewhat tenuous evidence by Dunn, the only witness for the libelant, bargee of the coal barge Sable, which was next forward of the Harris in the flotilla, does not show any negligence on the part of the Wyomissing.

I do not think that any fault can be attributed to her. This disposes of the proceeding in rem against the tug.

Under the in personam branch of the libel, however, the situation is different.

Since the decision of the Circuit Court of Appeals for this circuit in the case of Doherty v. Pennsylvania Railroad Company, 269 F. 959, it is settled that a coal barge in the situation of the Harris under such an arrangement as was made in the instant case is in the possession of the railroad company under a contract of bailment from the time it is delivered to the railroad tug in New York City until it is returned loaded with coal to New York City.

Some time Sunday afternoon the barges, which had been moored alongside those at the light stakes, began to swing out on the ebb tide, and the Harris, which had been the outside or port barge in the fourth tier of the flotilla, was pressed on the wreck of a steamer which lay inshore from the stakes, and of which the railroad company had knowledge.

If the position of this wreck was correctly marked on the blueprint of the Port Reading Terminal by the respondent's witnesses, it is, perhaps, difficult to see how the accident happened. However, it did happen, and damage to the Harris resulted, for which this libel was filed.

The tug of the railroad company, the Penncoyd, was at the terminal, but, although she apparently had steam up, she was not fully manned and was not available for any emergency.

It is true that the weather was good when the Wyomissing left for New York, but, as is shown by what happened in this case, bad weather is not the only risk to which a group of barges moored to light stakes, and without motive power, may become subject.

I think that, if the Penncoyd or some other tug employed by the railroad company had been available and reasonably vigilant, the swing of the barges at the light stakes could have been checked and the damage to the Harris prevented.

Consequently the railroad company as bailee of the Harris was negligent in its care of her and is, therefore, liable in personam.

An interlocutory decree providing for a dismissal of the libel against the Wyomissing and for a recovery against the Port Reading Railroad Company with a reference to a commissioner for the assessment of damages suffered by the Harris may be submitted for my signature.

As each party has prevailed in part, there will not be any costs, except the costs, if any, of the reference.